IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



GREGORY TAYLOR,

    Plaintiff,

v.                      Civil Action No. 3:15CV635

HUNTER, et al.,

    Defendants.

### MEMORANDUM OPINION

Gregory Taylor, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1]  In his Complaint, Taylor alleges that he was attacked by other inmates, including an inmate known as "Inferno," at the Piedmont Regional Jail ("PRJ") on August 20, 2015.  (Compl. 4-5, ECF No. 2.)[2]  The Court construes Taylor's Complaint to assert the following claim against Defendant DeVon Shearn:[3]

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court utilizes the pagination assigned to Taylor's Complaint by the CM/ECF docketing system.

[3] Shearn is a Correctional Officer at PRJ.

Shearn violated Taylor's Eighth Amendment[4] rights by failing to protect him from an assault perpetrated by other inmates after Taylor was transferred to the A-Pod.  (Compl. 1-2.)

This matter is before the Court on the Motion for Summary Judgment (ECF No. 27) filed by Shearn.  Despite receiving Roseboro[5] notice, Taylor has not responded to the Motion for Summary Judgment.  For the reasons that follow, the Court will grant the Motion for Summary Judgment and will dismiss Taylor's claim against Shearn.

## I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

[5] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

2

reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins,

3

Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Shearn has submitted his own declaration. (Mem. Supp. Mot. Summ. J. Ex. A ("Shearn Decl."), ECF No. 28-1.) Taylor failed to respond to the motion and, therefore, has not cited any evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. See Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).[6] Taylor's complete failure to present any evidence to counter Shearn's Motion for Summary Judgment permits the Court to rely solely on Shearn's declaration in deciding the Motion for Summary Judgment. See Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition

---

[6] Taylor submitted an unsworn Complaint. Because Taylor failed to swear to the contents of his Complaint under penalty of perjury, the Complaint fails to constitute admissible evidence. See United States v. White, 366 F.3d 291, 300 (4th Cir. 2004). Taylor also submitted what has been docketed as an affidavit from inmate David M. O'Neal with his Complaint. (ECF No. 2-2, at 1.) However, because the affidavit has no jurat and was not acknowledged before a notary, it does not constitute admissible evidence. See Tharrington v. Va., Dep't of Corr., No. 3:14CV720, 2015 WL 4606174, at *7 n.7 (E.D. Va. July 30, 2015) (citations omitted).

to summary judgment.'" (quoting <u>Skotak v. Tenneco Resins, Inc.</u>, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))).

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Taylor.

## II.   UNDISPUTED FACTS

On August 20, 2015, Shearn "was involved with the transfer of inmate Gregory Taylor from the B-Pod to the A-Pod." (Shearn Decl. ¶ 3.) Officers, including Shearn, "received instructions to move Inmate Taylor from the B-Pod to A-Pod because there was another inmate (Inmate Atkeison) moving into the B-Pod." (<u>Id.</u> ¶ 4.) Taylor and Atkeison were "on each other's 'enemy list.'" (<u>Id.</u>) Furthermore, six days before, on August 14, 2015, Taylor was involved in a fight with another inmate in the B-Pod. (<u>Id.</u>)

Prior to the transfer, neither Taylor nor any other inmate "express[ed] any concerns about [Taylor's] transfer into the A-Pod." (<u>Id.</u> ¶ 5.) Taylor "did not tell [Shearn] he had any enemies in the A-Pod, and while he indicated that he was comfortable remaining in the B-Pod, [Shearn's] orders were to move [Taylor] into the A-Pod for his safety, and the safety of others around him." (<u>Id.</u> ¶ 6) Particularly, Taylor did not "mention anyone whose nickname was 'Inferno.'" (<u>Id.</u> ¶ 7.)

Shearn and the other officers "resumed their duties" after Taylor was transferred to the A-Pod.  (Id. ¶ 8.)  "Upon learning that Inmate Taylor had subsequently been assaulted, [Taylor] was removed from the A-Pod housing unit and taken to the medical department for evaluation and treatment."  (Id.)  The medical department treated a cut on Taylor's forehead "with normal saline and steri strips."  (Id.)  Taylor "was then placed into protective custody in D-Pod."  (Id.)

Shearn avers that "[a]t no time did any inmate inform [him], or any other jail official in [his] presence, of any intent to assault inmate Taylor or cause him harm in any way." (Id. ¶ 9.)  Shearn "was not aware of any risk of harm to inmate Taylor prior to, or during, his transfer to the A-Pod, nor was [he] aware of any facts that might have suggested a risk of harm to Taylor."  (Id.)[7]

### III. FAILURE TO PROTECT

It is clear that the Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'"  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842

---

[7] In his Complaint, Taylor also alleges that his assault might have been the product of racially motivated violence at PRJ.  Taylor, however, has failed to produce evidence that suggests that a constitutionally intolerable risk of racially motivated violence occurs at PRJ.

6

F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. See id. at 834. The Supreme Court has emphasized that it is conscious disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. Thus, Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837); Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997)).

In Farmer, the Supreme Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. However, it is understood that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity

to commit more." Riccardo v. Rausch, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." Westmoreland v. Brown, 883 F. Supp. 67, 74 (E.D. Va. 1995). Therefore, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. See Grieveson v. Anderson, 538 F.3d 763, 776-77 (7th Cir. 2008).

This matter turns on whether Shearn knew of a substantial risk of harm to Taylor. Courts have found prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." Whaley v. Erickson, 339 F. App'x 619, 622 (7th Cir. 2009) (citing Brown v. Budz, 398 F.3d 904, 914-15 (7th Cir. 2005)). "On the other hand, as the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases. So, too, does the official's ability to respond." Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008) (internal citation and quotation marks omitted).

Taylor has not produced any admissible evidence that "Inferno" was particularly inclined to assault other inmates. See, e.g., Billman v. Ind. Dep't of Corr., 56 F.3d 785, 788 (7th

Cir. 1995). Taylor has also not produced evidence reflecting
that Shearn knew of any threats by Inferno directed toward
Taylor. See Whaley, 339 F. App'x at 622 (affirming grant of
summary judgment for defendants because the plaintiff "never
told the defendants that [the assailant] had made specific
threats to harm him, and he presented no evidence that any of
the defendants knew about [the assailant's] purported propensity
for violence"). Contrary to his unsupported assertions, prior
to the transfer, neither Taylor nor any other inmate
"express[ed] any concerns about [Taylor's] transfer into the A-
Pod." (Shearn Decl. ¶ 5.) Taylor "did not tell [Shearn] he had
any enemies in the A-Pod . . . ." (Id. ¶ 6.) Particularly,
Taylor did not "mention anyone whose nickname was 'Inferno.'"
(Id. ¶ 7.) Overall, Shearn "was not aware of any risk of harm
to inmate Taylor prior to, or during, his transfer to the A-Pod,
nor was [he] aware of any facts that might have suggested a risk
of harm to Taylor." (Id. ¶ 9.)

Under these circumstances, Taylor has not produced
sufficient evidence to allow a reasonable juror to infer that
Shearn actually perceived that Taylor faced a substantial risk
of harm from "Inferno" prior to his assault upon Taylor.
See Johnson, 145 F.3d at 168. As Taylor fails to demonstrate
that Shearn acted with deliberate indifference, Taylor's claim
against Shearn will be dismissed.

9

## IV.   CONCLUSION

For the foregoing reasons, Shearn's Motion for Summary Judgment (ECF No. 27) will be granted.   Taylor's claim against Shearn will be dismissed with prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to Taylor and counsel of record.

It is so ORDERED.

_____ /s/   _____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:  November  15, 2016

10