IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GREGORY TAYLOR,

    Plaintiff,

v.                       Civil Action No. 3:15CV635

HUNTER, et al.,

    Defendants.

## MEMORANDUM OPINION

Gregory Taylor, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] This matter is before the Court on the Motion to Dismiss (ECF No. 31) filed by Superintendent Hunter,[2] the Court's authority to review complaints by individuals proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2), and the Court's Memorandum Order of September 27, 2016, directing Taylor to show cause as to why

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Hunter is the Superintendent at the Piedmont Regional Jail ("PRJ").

Jenkins and Williams[3] should not be dismissed without prejudice for failure to serve them in a timely manner.  Despite receiving Roseboro[4] notice, Taylor has not responded to the Motion to Dismiss.  For the reasons that follow, the Court will dismiss without prejudice all claims against Jenkins and Williams pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, grant the Motion to Dismiss (ECF No. 31) filed by Superintendent Hunter, and dismiss Taylor's claim against Duty Sergeant.[5]  The action will be dismissed.

## I.   FAILURE TO SERVE JENKINS AND WILLIAMS

Under Federal Rule of Civil Procedure 4(m),[6] Taylor had ninety (90) days from April 14, 2016 to serve the Defendants.  The summonses issued to Defendants Jenkins and Williams were

---

[3] Jenkins and Williams are Correctional Officers at PRJ.

[4] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[5] Duty Sergeant is a Correctional Officer at PRJ.

[6] Rule 4(m) provides, in pertinent part:

If a defendant is not served within 90 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

returned as unexecuted on June 24, 2016.  (ECF No. 24, at 2, 5.)
With respect to Williams, the Marshal stated:   "Unable to
determine which Off. Williams is referenced in summons; multiple
Williams located @ Piedmont Reg. Jail.   Please provide more
identifiers and time frame."   (Id. at 2.)[7]   With respect to
Jenkins, the Marshal noted: "No longer employed[.]   Per Gloria
Giles, Admin. Asst. does not know where Lt. Jenkins works
currently.  Has no forwarding info regarding whereabouts."  (Id.
at 5.)   Copies of the Marshal's service documents were sent to
Taylor.  (Id. at 3, 6.)

      After the summonses were returned unexecuted as to Jenkins
and Williams, Taylor made no attempt to provide (1) more
identifying information, such as a first name, for Williams and
(2) a current place of employment or address for Jenkins.
Accordingly, by Memorandum Order entered on September 27, 2016,
the Court directed Taylor "to show good cause why his claims
against Defendants Jenkins and Williams should not be dismissed
without prejudice."   (ECF No. 33, at 1.)   Taylor has responded,
stating:

        I received a[] Memorandum Order October 4, 2016
    to show good cause for the failure to serve defendants
    Jenkins and Williams.  I have no way to serve them and
    need the help of the federal marshals to assist me
    again.   I'm not sure but I believe Jenkins does not
    work here anymore but Williams is still employed at

---

[7] The Court corrects the capitalization in the quotations
from the submissions in the record.

3

> Piedmont Regional Jail.  Defendants can be reached at
> Piedmont  Regional  Jail  801  Industrial  Park  Road
> Farmville, VA 23901.

(ECF No. 34, at 1.)

Rule 4(m) requires that, absent a showing of good cause, the Court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within the allotted 90-day period.  Fed. R. Civ. P. 4(m).  Courts within the United States Court of Appeals for the Fourth Circuit found good cause to extend the 90-day time period when the plaintiff has made "'reasonable, diligent efforts to effect service on the defendant.'"  Venable v. Dep't of Corr., No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting Hammad v. Tate Access Floors, Inc., 31 F. Supp. 2d 524, 528 (D. Md. 1999)). Neither pro se status nor incarceration constitutes good cause. Sewraz v. Long, No. 3:08CV100, 2012 WL 214085, at *1-2 (E.D. Va. Jan. 24, 2012) (citing cases).

Taylor's response fails to demonstrate good cause for his failure to serve Williams and Jenkins in a timely manner.  In June of 2016, Taylor was advised that the United States Marshal Service would need more identifying information for Defendant Williams since there were multiple individuals with the last name Williams employed at PRJ.  Taylor was also advised that Jenkins no longer worked at PRJ, and that the Marshal was unable to obtain information regarding a current place of employment or

a forwarding address. Despite this notice, Taylor failed to make an attempt to submit such information to the Court. Taylor provides no reason for his lack of diligence. Accordingly, Taylor's claims against Defendants Jenkins and Williams will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## II. PRELIMINARY REVIEW AND STANDARD FOR MOTION TO DISMISS

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright &

5

Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely

"conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. SUMMARY OF TAYLOR'S ALLEGATIONS

In his Complaint, Taylor states:[8]

---

[8] The Court utilizes the pagination assigned to Taylor's Complaint by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in quotations from Taylor's Complaint.

I was told by officer Shearn and Williams to pack up my things. I was moving to A pod. I immediately told them I had an enemy over there. They asked me what was his name. I told them "Inferno" was his nickname. They said so you're moving anyway. So I packed up and went into A pod. And immediately as soon as I went in, I was told to leave or I was going to get my ass kicked. Both officers heard this. They left. The inmates told me again to get out or they were going to whip my ass. I banged on the door and both officers came back. I told them what the inmates kept saying. Officer Shearn told me "It's not my problem you deal with it." And they left again. I then went into my cell and was confronted by 4 to 6 inmates questioning me about a tattoo on my neck. They were saying a lot of racial comments to me. Then they said you're the one who killed two black guys in Buckingham. I said no I am accused of killing two white guys in self-defense. Then I turned around to make up my bunk and someone said hey so I turned around and was punched above my left eye, also in my left ear. I was bleeding so badly I could barely see. They started going through my things taking what they wanted. They told me to go "beat the door" also they said you better clean up all that blood and someone gave me a rag and some kind of cleaning stuff. So I cleaned up all the blood really quick. Then I went and banged on the window and got the officers' attention. I then had my things by the door and the inmates started taking more of my things. I could not do anything because I was literally afraid for my life. Finally the officers came back. They took me out and handcuffed me. Officer Shearn asked me who had done it. I told him again I only knew the one inmate's nickname "Inferno." Then I said look at the video. Officer Shearn laughed and said "Oh um the video is broken." They took me to medical. Then I was placed in a room beside the officers' station where I remained 3 to 4 hours still covered in blood. Lt. Jenkins took pictures of my injuries. Then they put me in segregation 8-20 to 8-27. Then I was placed back in B-pod where I had been for 9 months with no problems. The officers removed two inmates about two hours out of A pod after all this happened. They were said to be my attackers.

(Compl. 4-5, ECF No. 2.)   Taylor seeks $2,000,000.00 "for pain and suffering."   (Id. at 3.)   He also requests surgery, an appointment with an optometrist, a CAT scan, to have the officers fired and "charged criminally," and to have "the perpetrators brought to justice."   (Id.)

The Court construes Taylor's Complaint to assert the following claims against Hunter and Duty Sergeant:

> Claim One:   Superintendent Hunter violated Taylor's Eighth Amendment[9] rights by permitting and inciting racially motivated violence at PRJ. (Compl. 1.)

> Claim Two:   Duty Sergeant violated Taylor's Eighth Amendment rights by "t[aking pictures and [doing] nothing to the officers or inmates who assaulted [Taylor]."   (Id. at 2.)

### IV.   ANALYSIS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States.   See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998).   "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."   Ashcroft v. Iqbal, 556 U.S.

---

[9] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   U.S. Const. amend. VIII.

662, 676 (2009) (citations omitted). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

### A. Claim Against Superintendent Hunter

In Claim One, Taylor contends that Superintendent Hunter violated his rights under the Eighth Amendment by permitting and inciting racially motivated violence at PRJ. (Compl. 1.) The Court construes Taylor's claim to assert that Superintendent Hunter failed to protect Taylor from assault by permitting such violence to occur at PRJ.

It is clear that the Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. See id. at 834. In order for a plaintiff to state a claim for failure to protect, a plaintiff must allege facts that plausibly suggest that he or she was "incarcerated under conditions posing a substantial risk of serious harm," id. (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)), and that the defendant acted with "deliberate indifference" to that danger. Id. at 837.

10

###### 1. Substantial Risk of Harm

"Any time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates . . . ." Westmoreland v. Brown, 883 F. Supp. 67, 74 (E.D. Va. 1995). As was the case in Westmoreland, "[t]he issue of constitutional import presented in this action is when the risk of harm becomes so substantial that 'deliberate indifference' to it, within the meaning of Farmer v. Brennan, is the legal equivalent of inflicting 'punishment.'" Id.[10] In Westmoreland, this Court observed that:

> The decisions finding that prison assaults constitute unconstitutional "punishment" have most often done so upon finding one of three species of particularized harm. In the first, the plaintiff has been at some particularized risk individually because of: (i) a personal trait; or (ii) membership in an identifiable class that is particularly vulnerable to harm. In the second, the person who committed the assault has demonstrated an unusually violent nature of which the defendant knows and which makes the assailant a substantial risk to his fellow inmates. In the third, the defendants were aware that the specific assault was ongoing or had occurred, yet had failed to respond to protect, or to treat, the victim.

Westmoreland, 883 F. Supp. at 74 (internal citations and parentheticals omitted).

By alleging that Superintendent Hunter permitted and incited racially motivated violence at PRJ, Taylor appears to

---

[10] In Farmer, the Supreme Court expressly declined to define "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." Farmer, 511 U.S. at 834 n.3.

suggest that he was at "some particularized risk individually because of . . . membership in an identifiable class that is particularly vulnerable to harm." Westmoreland, 883 F. Supp. at 74. A risk of assault may be sufficiently substantial as to require action by prison officials where it is "'highly probable'" that a particular attack will occur. Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005); see, e.g., Purvis v. Johnson, 78 F. App'x 377, 379 (5th Cir. 2003) (concluding that plaintiff's allegations that he informed officials four times that his cell-mate was a racist and threatened him every day because he was white were sufficient to state a claim for failure to protect).

Here, however, Taylor's Complaint only alludes to race when Taylor alleges that the inmates in A pod "were saying a lot of racial comments to me. Then they said you're the one who killed two black guys in Buckingham. I said no I am accused of killing two white guys in self-defense." (Compl. 4.) Taylor fails to allege facts setting forth his race and the race of the inmates who assaulted him. Thus, Taylor has failed to allege sufficient facts to support an inference that he faced a substantial risk of harm from racially motivated violence at PRJ.

## 2. Deliberate Indifference

"A prison official shows deliberate indifference if he 'knows of and disregards an excessive risk to inmate health or

12

safety.'" Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2013) (quoting Farmer, 511 U.S. at 837). Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837); Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997)).

Here, Taylor merely alleges that Superintendent Hunter was "aware of these violations and failed to respond." (Compl. 1.) This conclusory allegation is insufficient to demonstrate that Superintendent Hunter was aware that Taylor faced a substantial risk of harm from racially motivated violence at PRJ and disregarded that risk. See Odom, 349 F.3d at 770 (quoting Farmer, 511 U.S. at 837). Thus, because Taylor has failed to allege sufficient facts to support an Eighth Amendment claim against Superindentent Hunter, Claim One will be dismissed.

## B. Claim Against Duty Sergeant

In Claim Two, Taylor bases Duty Sergeant's liability on the fact that he "took pictures [after the assault] and did nothing to the officers or inmates who assaulted [Taylor]." (Compl. 2.) Taylor fails to allege facts indicating that Duty Sergeant was personally involved in the deprivation of his rights. Moreover, to the extent that Taylor contends that Duty Sergeant failed to

take action against the inmates who assaulted him, Taylor "as a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973). Accordingly, Claim Two will be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Superintendent Hunter's Motion to Dismiss (ECF No. 31) will be granted. Claims One and Two will be dismissed as to Hunter and Duty Sergeant. Taylor's claims against Jenkins and Williams will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. The action will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion to Taylor and counsel of record.

It is so ORDERED.

/s/   *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 15, 2016

14